1  **TIMOTHY R. GARRISON**
   California State Bar No. 228105
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, CA 92101-5008
   (619) 234-8467/Fax: (619) 687-2666
4  E-Mail: john_ellis@fd.org

5  Attorneys for FELIPE CARRASCO-RIVERA

6

7

8                    UNITED STATES DISTRICT COURT

9               SOUTHERN DISTRICT OF CALIFORNIA

10                  **(HONORABLE LARRY A. BURNS)**

11  UNITED STATES OF AMERICA,          )    Case No. 08-CR-1353-LAB
                                       )
12            Plaintiff,               )    DATE:       June 16, 2008
                                       )    TIME:       2:00 p.m.
13  v.                                 )
                                       )    STATEMENT   OF   FACTS   AND
14  **FELIPE CARRASCO-RIVERA,**        )    MEMORANDUM   OF   POINTS   AND
                                       )    AUTHORITIES   IN   SUPPORT   OF
15            Defendant.               )    DEFENDANT'S MOTIONS
    _____)

16

17                              **I.**

18                    **STATEMENT OF FACTS**

19          The following statement of facts is based on the complaint, the only material received from the

20  government.  Mr. Carrasco-Rivera does not accept this statement of facts as his own, and reserves the right

21  to take a contrary position at motion hearings and trial.  The facts alleged in these motions are subject to

22  amplification and/or modification at the time these motions are heard.

23          Mr. Carrasco-Rivera was arrested on April 20, 2008.  On April 30, 2008, the government filed a one

24  count indictment charging a violation of 8 U.S.C. § 1326.

25          These motions follow.

26  / / /

27  / / /

28  / / /

**II.**

**DISMISS THE INDICTMENT BECAUSE IT FAILS TO ALLEGE ALL
ELEMENTS OF THE CHARGED OFFENSE**

The indictment must be dismissed because the government has failed to properly allege all elements of the offense. The Fifth Amendment requires that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . .." Consistent with this Constitutional requirement, the Supreme Court has held that an indictment must "<u>fully, directly, and expressly, without any uncertainty or ambiguity</u>, set forth all the elements necessary to constitute the offense intended to be punished." *United States v. Carll*, 105 U.S. 611, 612-13 (1881) (emphasis added). It is black letter law that an indictment that does not allege an element of an offense, even an implied element, is defective, and should be dismissed. *See, e.g., Russell v. United States*, 369 U.S. 749, 769-72 (1962); *Stirone v. United States*, 361 U.S. 212, 218-19 (1960); *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999); *United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979).

In this case, the indictment charges a violation of Title 8, United States Code, Sections 1326(a) and (b). In *United States v. Salazar-Lopez*, 506 F.3d 748, 751 (9th Cir. 2007), the Ninth Circuit indicated that to be sufficient, an indictment charging a violation of section 1326(b) must allege either that the defendant has been previously removed subsequent to a conviction (*i.e.,* for a misdemeanor, a felony, an aggravated felony, or a crime of violence), or it must allege a specific date of the prior removal. In this case, the indictment only alleges that Mr. Carrasco-Rivera "was removed from the United States subsequent to September 3, 1987." The indictment does not allege either that this "removal" occurred subsequent to a conviction or allege a specific date of the prior removal. Therefore, because the indictment does not allege all elements of section 1326(b), the indictment must be dismissed.

Moreover, the indictment fails to allege the following elements necessary to convict Mr. Carrasco-Rivera of the offense: that Mr. Carrasco-Rivera knew he was in the United States, he failed to undergo inspection and admission by an immigration officer at the nearest inspection point, and that he voluntarily entered the United States. As a consequence, it must be dismissed. *See e.g., Nyrienda v. I.N.S.*, 279 F.3d 620 (8th Cir. 2002) (setting forth the components of an entry under the immigration law); *see also United States*

1  *v. Pernillo-Fuentes*, 252 F.3d 1030 (9th Cir. 2001); *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir.
2  1999).[1]

3                                                            **III.**

4  **DISMISS THE INDICTMENT BECAUSE IT VIOLATES MR. CARRASCO-RIVERA'S RIGHT
   TO PRESENTMENT.**

5

6          Mr. Carrasco-Rivera has a Fifth Amendment right to have a grand jury pass upon those facts
7  necessary to convict him at trial.  In the indictment, the government included the language:  "It is further
8  alleged that defendant FELIPE CARRASCO-RIVERA, was removed from the United States subsequent to
9  September 3, 1987."[2]  The indictment in this case violates Mr. Carrasco-Rivera's right to presentment in two
10 ways.  First, the language added by the government does not ensure that the grand jury actually found probable
11 cause that Mr. Carrasco-Rivera was deported after September 3, 1987, as opposed to simply being physically
12 removed from the United States.   Second, that the grand jury found probable cause to believe that
13 Mr. Carrasco-Rivera was removed "subsequent to September 3, 1987" does not address the possibility that
14 the government may at trial rely on a deportation that was never presented to, or considered by, the grand jury.

15         The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise
16 infamous crime, unless on a presentment or indictment of a Grand Jury."  U.S. Const. Amend. V.  The
17 Sixth Amendment provides that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be
18 informed of the nature and cause of the accusation . . .."  U.S. Const. Amend. VI.  Thus, a defendant has a
19 constitutional right to have the charges against him presented to a grand jury and to be informed of the
20 grand jury's findings via indictment.  *See Russell v. United States*, 369 U.S. 749, 763 (1962) (An indictment

21  ─────────────────

22         [1]  These issues were decided against Mr. Carrasco-Rivera in *United States v. Rivera-Sillas*,
    376 F.3d 887 (9th Cir. 2004).  However, these issues remain open in the Supreme Court.  To reserve
23  these issues for further review, Mr. Carrasco-Rivera incorporates the arguments made by the
    defendant in *Rivera-Sillas*.  If the Court wants full briefing on these issues, Mr. Carrasco-Rivera will
24  provide it.

25         [2]  Presumably, the government added this language in an attempt to comply with the
    Ninth Circuit's decision in *United States v. Covian-Sandoval*, 462 F.3d 1090 (9th Cir. 2006).  In
26  *Covian-Sandoval*, the Ninth Circuit held that it is an *Apprendi* violation for a court to increase a
27  person's statutory maximum under 8 U.S.C. § 1326(b) via a court-finding that a person had been
    removed from the United States <u>following</u> a conviction.  As indicated above, however, this language,
28  however, does not cure the problems with this indictment.  Should sentencing become necessary,
    Mr. Carrasco-Rivera will file further briefing on this issue.

1  must "contain[] the elements of the offense intended to be charged, and sufficiently apprise[] the defendant

2  of what he must be prepared to meet.").

3        To be sufficient, an indictment must allege every element of the charged offense. *See United States*

4  *v. Morrison*, 536 F.2d 286, 287 (9th Cir. 1976) (citing *United States v. Debrow*, 346 U.S. 374 (1953)).

5  Indeed, in order to be sufficient, an indictment must include implied elements not present in the statutory

6  language. *See Du Bo*, 186 F.3d at 1179. "If an element is necessary to convict, it is also necessary to indict,

7  because elements of a crime do not change as criminal proceedings progress." *United States v. Hill*, 279 F.3d

8  731, 741 (9th Cir. 2002). An indictment's failure to "recite an essential element of the charged offense is not

9  a minor or technical flaw . . . but a fatal flaw requiring dismissal of the indictment." *Du Bo*, 186 F.3d at 1179.

10        In the indictment, the government here has added the language:  "It is further alleged that defendant

11  FELIPE CARRASCO-RIVERA, was removed from the United States subsequent to September 3, 1987."

12  There is no indication from this "allegation" that the grand jury was charged with the legal meaning of the

13  word "removal" applicable in this context, as opposed to being simply removed from the United States in a

14  colloquial sense.  It is clear from *Covian-Sandoval* that in order to trigger the enhanced statutory maximum

15  contained in section 1326(b), the government must prove that a person was removed—as that term is used

16  in the immigration context—after having suffered a conviction. 462 F.3d at 1097-1098 (noting as part of its

17  analysis that immigration proceedings have fewer procedural protections that criminal proceedings).  A

18  deportation has the following elements: "(1) that a deportation proceeding occurred as to [the] defendant and

19  as a result, [(2)] a warrant of deportation was issued and [(3)] executed by the removal of the defendant from

20  the United States." *See United States v. Castillo-Basa*, 483 F.3d 890 (9th Cir. 2007) (citing, without

21  contesting, the elements of a deportation provided by the district court.)  As this is the type of removal the

22  government must prove before a petite jury, it is necessary that the government allege such a removal before

23  the grand jury.  As returned, however, there is no assurance from the face of the indictment that the grand jury

24  in this case was charged with the <u>type</u> of removal necessary to increase a person's statutory maximum under

25  section 1326(b).

26        As such, there is no fair assurance that the grand jury will have passed upon those facts necessary

27  to convict Mr. Carrasco-Rivera.  Additionally, as charged, there is no fair assurance that the indictment will

28  contain those allegations the government will attempt to prove at trial.  If the government alleged before the

1  grand jury that Mr. Carrasco-Rivera was removed (in a colloquial sense), but offers proof at trial that

2  Mr. Carrasco-Rivera was removed (in an immigration sense), there will be a constructive amendment of the

3  indictment at trial. *See Stirone v. United States*, 361 U.S. 212, 217-19 (1960). Either scenario represents a

4  violation of Mr. Carrasco-Rivera's right to presentment. *Stirone*, 361 U.S. at 218-19.

5      A second problem with the indictment is that there is no indication which (if any) deportation the

6  government presented to the grand jury. In most cases, the government will have a choice of deportations to

7  present to the grand jury to support an allegation that a person had been deported after a specific date.[3] This

8  renders it a very real possibility that the government alleged one deportation to the grand jury to sustain its

9  allegation that Mr. Carrasco-Rivera was removed from the United States, but will attempt to prove at trial a

10 wholly different deportation to sustain its trial proof. If this were to turn out to be the case, Mr. Carrasco-

11 Rivera's right to have the grand jury pass on all facts necessary to convict him would be violated. *See Du Bo*,

12 186 F.3d 1179.

13                                         **IV.**

14          **DISMISS THE INDICTMENT DUE TO MISINSTRUCTION OF THE GRAND JURY.**

15      The indictment in the instant case was returned by the January 2007 grand jury. That grand jury was

16 instructed on January 11, 2007. The instructions to the impaneled grand jury deviate from the instructions

17 at issue in the major Ninth Circuit cases challenging a form grand jury instruction previously given in this

18 district in several ways.[4] First, instructing grand jurors that their singular duty is to determine whether or not

19 probable cause exists and that they have no right to decline to indict when the probable cause standard is

20 satisfied. Second, instructing grand jurors of a non-existent prosecutorial duty to present exculpatory

21 evidence. These instructions compounded by the erroneous instructions and comments to prospective grand

22

23

24          [3] At this time, the government has provided no discovery on any alleged deportation.

25          [4] *See, e.g., United States v. Cortez-Rivera*, 454 F.3d 1038 (9th Cir. 2006); *United States v.*
26 *Navarro-Vargas*, 408 F.3d 1184 (9th Cir.) (*en banc*), cert. denied, 126 S. Ct. 736 (2005) (*Navarro-Vargas II*); *United States v. Navarro-Vargas*, 367 F.3d 896 (9th Cir. 2004)(*Navarro-Vargas I*);
27 *United States v. Marcucci*, 299 F.3d 1156 (9th Cir. 2002) (per curiam). Because the court and the government are familiar with this motion, only a truncated version of it has been filed. If the Court
28 or the government request further briefing on this issue, or the transcript from the grand jury proceedings, then it will be provided forthwith.

1  jurors during *voir dire* of the grand jury panel, which immediately preceded the instructions.  Therefore, the

2  indictment should be dismissed.

3                                                  **V.**

4                    **MOTION TO STRIKE SURPLUSAGE FROM THE INDICTMENT**

5            The above arguments to dismiss the indictment based on the government's failure to comply with

6  Mr. Carrasco-Rivera's Fifth and Sixth Amendment rights is premised on *Covian-Sandoval* having read into

7  section 1326 an additional element—a deportation that occurred at a particular time—that the government

8  must plead to the grand jury and prove to a jury.  To the extent the government argues that *Covian-Sandoval*

9  did not create an additional element, the indictment contains surplusage.  In other words, if the government

10  argues that the <u>timing</u> of a person's deportation is not a element of section 1326, but rather a sentencing factor

11  under subsection (b) of section 1326, the indictment alleges a fact—the timing of a person's deportation—the

12  Supreme Court has clearly held to be decided by a judge.

13           The Ninth Circuit has "repeatedly held that language [in an indictment] that describes elements

14  beyond what is required under statute is surplusage and need not be proved at trial."  *Bargas v. Burns*,

15  179 F.3d 1207, 1216 n. 6 (9th Cir. 1999).  Surplusage in an indictment is subject to being struck at the request

16  of the defendant.  *United States v. Fernandez*, 388 F.3d 1199, 1220-21 (9th Cir. 2004).  In this case, if the

17  government argues that the date of a person's deportation is not a required element of section 1326, the

18  indictment contains language beyond that which is necessary to convict Mr. Carrasco-Rivera of violating

19  section 1326.  If the date of a person's deportation is not an element of section 1326, then the language in the

20  indictment— "It is further alleged that defendant FELIPE CARRASCO-RIVERA, was removed from the

21  United States subsequent to September 3, 1987."—is surplusage.  So too is the government's allegation in

22  the indictment that Mr. Carrasco-Rivera violated section 1326, subsection (b).

23           At one time, the Ninth Circuit considered subsection (b) of section 1326 a separate offense from

24  subsection (a).  *See United States v. Corona-Sanchez*, 291 F.3d 1201, 1203 (9th Cir. 2002) (*en banc*).  This

25  changed, however, following the Supreme Court's decision in *Almendarez-Torres v. United States*,

26  523 U.S. 224 (1998).  *See Corona-Sanchez*, 291 F.3d at 1203.  In *Almendarez-Torres*, the Supreme Court

27  decided that subsection (b) of section 1326 described a sentencing provision, to be determined by a judge,

28  rather than a substantive offense.  *See id.*  Following *Almendarez-Torres*, the Ninth Circuit rethought the way

1   in which subsection (b) should be viewed, to the extent that indictments and judgements that reflect a

2   violation of both subsection (a) and subsection (b) of section 1326 should have the reference to subsection (b)

3   struck to "unambiguously reflect that the defendant was convicted of only one punishable offense

4   pursuant . . .." *Id.*

5         Although an allegation of a particular date of deportation would likely be an appropriate response

6   on the government's part to the holding of *Covian-Sandoval*, the government here has chosen to include in

7   the indictment an allegation that goes solely towards an allegation under subsection (b) of section 1326.

8   Indeed, the government has chosen to actually allege a violation of subsection (b) of section 1326 in the

9   indictment.  As *Almendarez-Torres* makes clear, however, Congress clearly intended findings under

10  subsection (b) of section 1326 to made by a judge, rather than a jury.  *Almendarez-Torres*, 523 U.S. at 235

11  ("we believe that Congress intended to set forth a sentencing factor in subsection (b)(2) and not a separate

12  criminal offense).

13        Although the Ninth Circuit is free to overrule its own precedent regarding whether Congress intended

14  a statutory provision to be decided by a judge, rather than a jury, *see, e.g., United States v. Buckland*,

15  289 F.3d 558, 564-68 (9th Cir. 2002) (*en banc*) (discussing enhanced penalties under 21 U.S.C. § 841), it has

16  not seen fit to overrule the Supreme Court's decision in *Almendarez-Torres*.  *See, e.g., United States v.*

17  *Weiland*, 420 F.3d 1062, 1079 n. 16 (9th Cir. 2005).  For these reasons, to the degree the government argues

18  that *Covian-Sandoval* did not create an additional element of section 1326, the government has pled in the

19  indictment an allegation that Congress intended to be decided by judge, rather than a jury.[5]  Therefore,

20  pursuant to Federal Rule of Criminal Procedure 7(d), Mr. Carrasco-Rivera moves to strike this surplusage

21  from the indictment.

22

23

24  _____

25        [5]  The holdings in *Covian-Sandoval* and *Almendarez-Torres* also render subsection (b) of

26  section 1326 unconstitutional. In *Covian-Sandoval*, the Ninth Circuit held that a jury must determine
    the timing of a person's deportation to trigger subsection (b)'s enhanced statutory maximum.

27  *Covian-Sandoval*, 462 F.3d  1097-1098.  In *Almendarez-Torres*, however, the Supreme Court held
    that Congress intended subsection (b) to be a sentencing provision to be determined by a judge.

28  *Almendarez-Torres*, 523 U.S. at 235.  It is thus clear that subsection (b), as written and construed by
    the Supreme Court, violates *Apprendi*.

# VI.

## MOTION TO PRODUCE GRAND JURY TRANSCRIPTS

Mr. Carrasco-Rivera hereby moves this Court to compel the government to produce all grand jury transcripts in this case. *See* U.S. CONST. AMENDS V & VI[6].  Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) allows disclosure "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  Given the arguments raised above, it is clear that "a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  Fed. R. Crim. P 6(e)(3)(E)(ii).  Mr. Carrasco-Rivera requests the Court "authorize disclosure" of the grand jury transcript to allow Mr. Carrasco-Rivera to adequately prepare for trial and to perfect his appellate record. *See* id.

# VII.

## MOTION TO SUPPRESS STATEMENTS

Mr. Carrasco-Rivera moves to suppress his statements on the grounds of an invalid *Miranda* waiver and voluntariness.  According to the government, Mr. Carrasco-Rivera was made a post-arrest statement.

### A.    The Government Must Demonstrate Compliance with *Miranda*.

In order for any statements made by Mr. Carrasco-Rivera to be admissible against him, the government must demonstrate that they were obtained in compliance with the *Miranda* decision. The

---

[6] The Supreme Court has found that "[t]he grand jury is an integral part of our constitutional heritage which was brought to this country with the common law.  The Framers, most of them trained in the English law and traditions, accepted the grand jury as a basic guarantee of individual liberty . . . the grand jury continues to function as a barrier to reckless or unfounded charges. 'Its adoption in our Constitution as the sole method for preferring charges in serious criminal cases shows the high place it held as an instrument of justice.' *Costello v. United States*, 350 U.S. 359, 362 (1956).  Its historic office has been to provide a shield against arbitrary or oppressive action, by insuring that serious criminal accusations will be brought only upon the considered judgment of a representative body of citizens acting under oath and under judicial instruction and guidance. " *United States v. Manduano*, 425 U.S. 564, 571 (1976).  In order to ensure that the criminally accused are safeguarded from reckless and unfounded charges, judges must take their duty to provide guidance seriously and not simply pay lip service to the assurances of the government.  It is curious why the government, in this district in particular, fights so hard to keep grand jury proceedings sealed.  Interestingly, in many cases, the "witness" who "testifies" before the grand jury is a border patrol agent who neither participated in the arrest or the investigation.  He is only called to read a report which has been prepared by others.  Such a practice does not allow for the considered judgment of grand jurors.  Thus, the release of transcripts is appropriate.

1 government must establish that Mr. Carrasco-Rivera's waiver of his *Miranda* rights was voluntary, knowing,

2 and intelligent. *See Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). When interrogation continues without

3 the presence of an attorney, and a statement results, the government has a heavy burden to demonstrate that

4 the defendant has intelligently and voluntarily waived his privilege against self-incrimination. *Miranda*, 384

5 U.S. at 475. The court must indulge every reasonable presumption against waiver of fundamental

6 constitutional rights, so the burden on the government is great. *United States v. Heldt*, 745 F. 2d 1275, 1277

7 (9th Cir. 1984).

8      In determining whether a waiver is voluntary, knowing, and intelligent, the court looks to the totality

9 of the circumstances surrounding the case. *Edwards v. Arizona*, 451 U.S. 477 (1981); *United States v.*

10 *Garibay*, 143 F.3d 534 (9th Cir. 1998). The Ninth Circuit has held that determination of the validity of a

11 *Miranda* waiver requires a two prong analysis: the waiver must be both (1) voluntary and (2) knowing and

12 intelligent. *Derrick v. Peterson*, 924 F. 2d 813 (9th Cir. 1990). The second prong requires an inquiry into

13 whether "the waiver [was] made with a full awareness both of the nature of the right being abandoned and

14 the consequences of the decision to abandon it." *Id.* at 820-821 (quoting *Colorado v. Spring*, 479 U.S. 564,

15 573 (1987)). Not only must the waiver be uncoerced, then, it must also involve a "requisite level of

16 comprehension" before a court may conclude that *Miranda* rights have been legitimately waived. *Id.* (quoting

17 *Colorado v. Spring*, 479 U.S. at 573). Unless and until *Miranda* warnings and a knowing and intelligent

18 waiver are demonstrated by the prosecution, no evidence obtained as a result of the interrogation can be used

19 against the defendant. *Miranda*, 384 U.S. at 479. The government in this case must prove that Mr. Carrasco-

20 Rivera waived his rights intelligently and voluntarily. Mr. Carrasco-Rivera disputes any allegation any waiver

21 was knowing, intelligent, and voluntarily.

22 **B.     Mr. Carrasco-Rivera's Statements Must Be Voluntary.**

23      Even if this Court determines that Mr. Carrasco-Rivera validly waived his *Miranda* rights, it must

24 still make a determination that any statements are voluntary. Under 18 U.S.C. § 3501(a), this Court is

25 required to determine, whether any statements made by Mr. Carrasco-Rivera are voluntary. In addition,

26 section 3501(b) requires this Court to consider various enumerated factors, including whether Mr. Carrasco-

27 Rivera understood the nature of the charges against him and whether he understood his rights. Without such

28 evidence, this Court cannot adequately consider these statutorily mandated factors.

1    Moreover, section 3501(a) requires this Court to make a factual determination.  Where a factual

2    determination is required, Fed. R. Crim. P. 12 obligates courts to make factual findings.  *See United States*

3    *v. Prieto-Villa*, 910 F.2d 601, 606-10 (9th Cir. 1990).  Because "'suppression hearings are often as important

4    as the trial itself,'" *id.* at 610 (quoting *Waller v. Georgia*, 467 U.S. 39, 46 (1984)), these findings should be

5    supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's

6    responsive pleading.

7                                          **VIII.**

8                      **MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE**

9         (1)    The Defendant's Statements.  The government must disclose to the defendant <u>all</u> copies of

10   any written or recorded statements made by the defendant; the substance of any statements made by the

11   defendant which the government intends to offer in evidence at trial -- either in its case-in-chief or in rebuttal;

12   *see* Fed. R. Crim. P. 16, any response by the defendant to interrogation; the substance of any oral statements

13   which the government intends to introduce at trial and any written summaries of the defendant's oral

14   statements contained in the handwritten notes of the government agent; any response to any *Miranda* warnings

15   which may have been given to the defendant; as well as any other statements by the defendant.  Fed. R. Crim.

16   P. 16(a)(1)(A)[7].  The Advisory Committee Notes and the 1991 Amendments to Rule 16 make clear that the

17   Government must reveal <u>all</u> the defendant's statements, whether oral or written, regardless of whether the

18   government intends to make any use of those statements.  Federal Rule of Criminal Procedure 16 is designed

19   "to protect the defendant's rights to a fair trial." *United States v. Rodriguez*, 799 F.2d 649 (11th Cir. 1986);

20   *see also United States v. Noe*, 821 F.2d 604, 607 (11th Cir. 1987) (reversing conviction for failure to provide

21   statements offered in rebuttal -- government's failure to disclose statements made by the defendant is a serious

22   detriment to preparing trial and defending against criminal charges).

23        (2)    Arrest Reports and Notes.  The defendant also specifically requests that the government turn

24   over all arrest reports, notes and TECS records not already produced that relate to the circumstances

25   surrounding his arrest or any questioning.  This request includes, but is not limited to, any rough notes,

26   records, reports, transcripts, referral slips, or other documents in which statements of the defendant or any

27   _____

28        [7]  Of course, any of Mr. Carrasco-Rivera's statements, which are exculpatory, must be
     produced, as well.  *See Brady v. Maryland*, 373 U.S. 83 (1963).

1  other discoverable material is contained.  Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A)

2  and *Brady v. Maryland*.  The government must produce arrest reports, investigators' notes, memos from

3  arresting officers, sworn statements, and prosecution reports pertaining to the defendant.  *See* Fed. R. Crim.

4  P. 16(a)(1)(B) and (C), 26.2 and 12(I); *United States v. Harris*, 543 F.2d 1247, 1253 (9th Cir. 1976) (original

5  notes with suspect or witness must be preserved); *see also United States v. Anderson*, 813 F.2d 1450, 1458

6  (9th Cir. 1987) (reaffirming *Harris*' holding).

7          (3)    <u>Brady Material</u>.  The defendant requests all documents, statements, agents' reports, and

8  tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the

9  government's case.  *Kyles v. Whitley*, 514 U.S. 419 (1995).  Under *Brady, Kyles* and their progeny,

10  impeachment, as well as exculpatory evidence, falls within the definition of evidence favorable to the accused.

11  *See also United States v. Bagley*, 473 U.S. 667 (1985); *United States v. Agurs*, 427 U.S. 97 (1976).  This

12  includes information obtained from other investigations which exculpates Mr. Carrasco-Rivera.

13          (4)    <u>Any Information That May Result in a Lower Sentence Under The Guidelines</u>.  The

14  government must also produce this information under *Brady v. Maryland*.  This request includes any

15  cooperation or attempted cooperation by the defendant, as well as any information, including that obtained

16  from other investigations or debriefings, that could affect any base offense level or specific offense

17  characteristic under Chapter Two of the Guidelines.  The defendant also requests any information relevant

18  to a Chapter Three adjustment, a determination of the defendant's criminal history, and information relevant

19  to any other application of the Guidelines.

20          (5)    <u>The Defendant's Prior Record</u>.  The defendant requests disclosure of his prior record.

21  Fed. R. Crim. P. 16(a)(1)(B).

22          (6)    <u>Any Proposed 404(b) Evidence</u>.  The government must produce evidence of prior similar acts

23  under Fed. R. Crim. P. 16(a)(1)(C) and Fed. R. Evid. 404(b) and 609.  In addition, "upon request of the

24  accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature" of

25  any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial and the purpose for

26  which introduction is sought.  This applies not only to evidence which the government may seek to introduce

27  in its case-in-chief, but also to evidence which the government may use as rebuttal.  *See United States v. Vega*,

28  188 F.3d 1150 (9th Cir. 1999).  The defendant is entitled to "reasonable notice" so as to "reduce surprise,"

1  preclude "trial by ambush" and prevent the "possibility of prejudice." *Id.; United States v. Perez-Tosta*, 36

2  F.3d 1552, 1560-61 (11th Cir. 1994).  Mr. Carrasco-Rivera requests such reasonable notice at least two weeks

3  before trial so as to adequately investigate and prepare for trial.

4         (7)   <u>Evidence Seized</u>.  The defendant requests production of evidence seized as a result of any

5  search, either warrantless or with a warrant.  Fed. R. Crim. P. 16(a)(1)(E).

6         (8)   <u>Request for Preservation of Evidence</u>.  The defendant specifically requests the preservation

7  of any and all physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody,

8  or care of the government and which relates to the arrest or the events leading to the arrest in this case.  This

9  request includes, but is not limited to, the results of any fingerprint analysis, the defendant's personal effects,

10  and any evidence seized from the defendant or any third party in relation to this case.

11         (9)   <u>Henthorn Material</u>.  Mr. Carrasco-Rivera requests that the Assistant United States Attorney

12  assigned to this case oversee a review of all personnel files of each agent involved in the present case for

13  impeachment material.  *Kyles*, 514 U.S. at 419; *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991);

14  *United States v. Lacy*, 896 F. Supp. 982 (N.D. Ca. 1995).  At a minimum, the prosecutor has the obligation

15  to inquire of his agents in order to ascertain whether or not evidence relevant to veracity or other impeachment

16  exists.

17        (10)   <u>Tangible Objects</u>.  The defendant requests the opportunity to inspect and copy, as well as test,

18  if necessary, all other documents and tangible objects, including photographs, books, papers, documents,

19  fingerprint analyses, vehicles, or copies of portions thereof, which are material to the defense or intended for

20  use in the government's case-in-chief or were obtained from or belong to the defendant.  Fed. R. Crim.

21  P. 16(a)(1)(E).  Specifically, to the extent they were not already produced, the defendant requests copies of

22  all photographs in the government's possession, including, but not limited to, the defendant and any other

23  photos taken in connection with this case.

24        (11)   <u>Expert Witnesses</u>.  The defendant requests the name, qualifications, and a written summary

25  of the testimony of any person that the government intends to call as an expert witness during its case in chief.

26  Fed. R. Crim. P. 16(a)(1)(G).  The defense requests that notice of expert testimony be provided at a minimum

27  of two weeks prior to trial so that the defense can properly prepare to address and respond to this testimony,

28  including obtaining its own expert and/or investigating the opinions and credentials of the government's

expert. The defense also requests a hearing in advance of trial to determine the admissibility of qualifications of any expert. *See Kumho v. Carmichael Tire Co.* 119 S. Ct. 1167, 1176 (1999) (trial judge is "gatekeeper" and must determine reliability and relevancy of expert testimony and such determinations may require "special briefing or other proceedings . . ..").

(12)  <u>Evidence of Bias or Motive to Lie</u>. The defendant requests any evidence that any prospective government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or her testimony.

(13)  <u>Impeachment Evidence</u>. The defendant requests any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to the defendant. *See* Fed. R. Evid. 608, 609 and 613; *Brady v. Maryland*.

(14)  <u>Evidence of Criminal Investigation of Any Government Witness</u>. The defendant requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.

(15)  <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling</u>. The defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.

(16)  <u>Jencks Act Material</u>. The defendant requests production in advance of trial of all material, including any tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500; Fed. R. Crim. P. 26.2. Advance production will avoid the possibility of delay at the request of the defendant to investigate the Jencks material. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under section 3500(e)(1). *Campbell v. United States*, 373 U.S. 487, 490-92 (1963); *see also United States v. Boshell*, 952 F.2d 1101 (9th Cir. 1991) (holding that, where an agent goes over interview notes with subject, interview notes are subject to Jencks Act).

1    (17)    <u>Giglio Information</u>.  Pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), the defendant

2    requests all statements and/or promises, express or implied, made to any government witnesses, in exchange

3    for their testimony in this case, and all other information which could arguably be used for the impeachment

4    of any government witnesses.

5    (18)    <u>Agreements Between the Government and Witnesses</u>.  In this case, the defendant requests

6    identification of any cooperating witnesses who have committed crimes, but were not charged, so that they

7    may testify for the government in this case.  The defendant also requests discovery regarding any express or

8    implicit promise; understanding; offer of immunity; past, present, or future compensation; or any other kind

9    of agreement or understanding, including any implicit understanding relating to criminal or civil income tax,

10    forfeiture or fine liability between any prospective government witness and the government (federal, state

11    and/or local).  This request also includes any discussion with a potential witness about, or advice concerning,

12    any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not

13    followed.

14    Pursuant to *United States v. Sudikoff*, 36 F.Supp.2d 1196 (C.D. Cal. 1999), the defense requests <u>all</u>

15    statements made, either personally or through counsel, <u>at any time</u>, which relate to the witnesses' statements

16    regarding this case, any promises -- implied or express -- regarding punishment/prosecution or detention of

17    these witnesses, any agreement sought, bargained for or requested, on the part of the witness at any time.

18    (19)    <u>Informants and Cooperating Witnesses</u>.  To the extent that there was any informant, or any

19    other tip leading to a TECS hit in this case, the defendant requests disclosure of the names and addresses of

20    all informants or cooperating witnesses used, or to be used, in this case, and in particular, disclosure of any

21    informant who was a percipient witness in this case or otherwise participated in the crime charged against

22    Mr. Carrasco-Rivera.  The government must disclose the informant's identity and location, as well as the

23    existence of any other percipient witness unknown or unknowable to the defense.  *Roviaro v. United States*,

24    353 U.S. 53, 61-62 (1957).  The government must disclose any information derived from informants which

25    exculpates or tends to exculpate the defendant.

26    (20)    <u>Bias by Informants or Cooperating Witnesses</u>.  The defendant requests disclosure of any

27    information indicating bias on the part of any informant or cooperating witness. *Giglio v. United States*. Such

28

1  information would include what, if any, inducements, favors, payments or threats were made to the witness

2  to secure cooperation with the authorities.

3        (21)   <u>Inspection and Copying of A-File</u>.  Mr. Carrasco-Rivera requests that this Court order the

4  government to make all A-Files relevant to Mr. Carrasco-Rivera available for inspection and copying.

5        (22)   <u>Residual Request</u>.  Mr. Carrasco-Rivera intends, by this discovery motion, to invoke his rights

6  to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution

7  and laws of the United States.  Mr. Carrasco-Rivera requests that the government provide his attorney with

8  the above-requested material sufficiently in advance of trial to avoid unnecessary delay prior to cross-

9  examination.

10  **IX.**

11  **<u>MOTION FOR LEAVE TO FILE FURTHER MOTIONS</u>**

12        Mr. Carrasco-Rivera and defense counsel have received limited discovery in this case.  **Specifically,**

13  **after viewing the a-file, Mr. Carrasco-Rivera will be filing a motion attacking the validity of his alleged**

14  **deportation.**  Additionally, as new information surfaces due to the government providing discovery in

15  response to these motions, or an order of this Court, defense may find it necessary to file further motions, or

16  to supplement existing motions with additional facts.  The denial of this motion will result in a violation, at

17  a minimum, of Mr. Carrasco-Rivera's Fifth and Sixth Amendment rights.  Therefore, defense counsel requests

18  the opportunity to file further motions based upon information gained from discovery.

19        Respectfully submitted,

20

21  DATED:     May 12, 2008           <u>/s/ TIMOTHY R. GARRISON</u>

22                                     TIMOTHY R. GARRISON
                                   Federal Defenders of San Diego, Inc.
                                   Attorneys for Felipe Carrasco-Rivera

23                                     timothy_garrison@fd.org

24

25

26

27

28