KAREN P. HEWITT
United States Attorney
CHRISTOPHER P. TENORIO
Assistant U.S. Attorney
California State Bar No. 166022
880 Front Street, Suite 6293
San Diego, California  92101-8893
Telephone: (619) 557-7843
Christopher.Tenorio@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>     v.<br><br>FELIPE CARRASCO-RIVERA,<br><br>                    Defendant. | CRIMINAL CASE NO.  08CR1353-LAB<br>HON. LARRY A. BURNS<br>COURTROOM 9<br><br>DATE:     June 16, 2008<br>TIME:     2:00 p.m.<br><br>GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS:<br>1)   DISMISS INDICTMENT FOR FAILURE TO STATE AN OFFENSE;<br>2)   DISMISS INDICTMENT FOR VIOLATION OF THE RIGHT TO PRESENTMENT;<br>3)   DISMISS INDICTMENT DUE TO MISINSTRUCTION OF THE JURY;<br>4)   STRIKE SURPLUSAGE;<br>5)   PRODUCE GRAND JURY TRANSCRIPTS;<br>6)   SUPPRESS STATEMENTS;<br>7)   COMPEL DISCOVERY AND PRESERVE EVIDENCE; AND,<br>8)   GRANT LEAVE TO FILE FURTHER MOTIONS.<br><br>TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Christopher P. Tenorio, Assistant United States Attorney, and hereby files its

1  response and opposition to Defendant's above-referenced motions.  Said
2  response is based upon the files and records of the case, together
3  with the attached Statement of Facts and Memorandum of Points and
4  Authorities.

5                              **I.**

6                       **STATEMENT OF FACTS**

7      **A.    PRESENT OFFENSE**

8      On April 20, 2008, at approximately 12:45 p.m., Border Patrol
9  Agent Christopher Mackes encountered Defendant Felipe Carrasco-Rivera
10 and another individual attempting to hide in dense brush in an area
11 known as "East Smugglers," located approximately three miles west of
12 the San Ysidro Port of Entry and 75 yards north of the United States-
13 Mexico International Border.  Agent Mackes identified himself as a
14 Border Patrol Agent.  Pursuant to an immigration inspection, Defendant
15 stated that he was a Mexican citizen with no immigration documents to
16 permit him to be or remain in the United States.  Agent Mackes
17 arrested Defendant and transported him to the Imperial Beach Border
18 Patrol Station.

19     At the station, at approximately 3:11 p.m., Agent Mackes advised
20 Defendant of his <u>Miranda</u> rights in Spanish, which Border Patrol Agent
21 Roberto Arriaga witnessed.  Defendant stated he understood his rights
22 and was willing to waive his rights and answer questions.  Defendant
23 stated under oath that he had jumped a fence into the United States
24 at the international border earlier that afternoon.

25     At approximately 3:15 a.m., Agent Mackes advised Defendant of his
26 right to consult with a representative of the Mexican Consulate.
27 Defendant elected to exercise his right to have contact with the
28 Consulate.  At approximately 3:30 p.m., Defendant made contact with

1  the Mexican Consulate.

2      At approximately 9:15 a.m. on April 21, 2008, Defendant was
3  reminded of his <u>Miranda</u> rights.  Defendant affirmed that he understood
4  his rights.  He subsequently confirmed that he had no immigration
5  documents that would allow him to legally enter or remain in the
6  United States.  The advisals and Defendant's subsequent statements
7  were digitally recorded.

8      Defendant was subsequently indicted on April 30, 2008 for
9  Deported Alien Found in the United States, in violation of Title 8,
10  United States Code, Section 1326(a) and (b).

11     **B.    PRIOR HISTORY**

12         **1.    Criminal History**

13     Defendant's prior criminal convictions include the following.
14  On February 10, 1986, Defendant was convicted of Possession of a
15  Controlled Substance (felony), in violation of California Health &
16  Safety Code § 11350, in the Superior Court in San Joaquin, California.
17  Defendant was sentenced to three years probation.

18     On September 3, 1987, Defendant was convicted of Lewd or
19  Lascivious Acts with a Child Under 14 (felony), in violation of
20  California Penal Code § 288(a), in the Superior Court of Alameda
21  County, California.  Defendant was sentenced to three years prison
22  custody.

23     On December 20, 2006, Defendant was convicted of Possession of
24  a Controlled Substance, in violation of California Health and Safety
25  Code § 11350(A), in the Superior Court of Alameda County, California.
26  Defendant was sentenced to 74 days in custody and three years of
27  probation.

28  //

## 2.   Immigration History

Defendant was previously ordered deported by an Immigration Judge and removed from the United States on approximately five occasions. A Notice of Intent To Issue a Final Administrative Removal Order and a Final Administrative Removal Order were issued on March 9, 2006. Defendant was most recently removed on April 16, 2008 through San Ysidro, California.

## II.

### THE INDICTMENT SHOULD NOT BE DISMISSED FOR FAILURE TO ALLEGE ESSENTIAL ELEMENTS

### A.   INTRODUCTION

The indictment returned by the Grand Jury in this case sets forth each of the necessary elements of a violation of 8 U.S.C. § 1326 ("Section 1326"). Specifically, the indictment alleges that Defendant (1) is an alien; (2) was deported from the United States; and (3) was found in the United States without the permission of the Attorney General.   See United States v. Parga-Rosas, 238 F.3d 1209, 1211 (9th Cir. 2001).  The indictment in this case sets forth each of these elements and is therefore valid.

The indictment provides notice of the requisite elements of the offense of being found in the United States after deportation.  "An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." United States v. Bailey, 444 U.S. 394, 414 (1980) (quotation marks omitted).

The Ninth Circuit has specifically held that Section 1326 is a

1   general, rather than specific, intent crime.  <u>See</u> <u>United States v.</u>

2   <u>Ortiz-Villegas</u>, 49 F.3d 1435, 1437 (9th Cir. 2000); <u>United States v.</u>

3   <u>Ayala</u>, 35 F.3d 423, 426 (9th Cir. 1994); <u>Pena-Cabanillas v. United</u>

4   <u>States</u>, 394 F.2d 785, 790 (9th Cir. 1968).  Again, this conclusion

5   means that no specific intent to voluntarily enter the United States

6   need be alleged in the indictment where the defendant is charged with

7   being "found in" the United States.  <u>See</u> <u>United States v. Parga-Rosas</u>,

8   238 F.3d 1209 (9th Cir. 2001).

9       In <u>Parga-Rosas</u>, the Ninth Circuit recognized that Section 1326

10  sets forth three separate offenses for a deported alien: to "enter,"

11  to "attempt to enter," and to be "found in."  <u>See</u> <u>id.</u>, 238 F.3d at

12  1213.  As the Court noted, "we have never suggested that the crime of

13  'entry' must be charged in order to charge the crime of being 'found

14  in.'"  <u>Id.</u>  In short, for "found in" prosecutions under Section 1326,

15  the indictment need not allege the specific act of entry into the

16  United States.

17      **B.    THE INDICTMENT NEED NOT ALLEGE MENS REA, INSPECTION AND**
        **ADMISSION, NOR VOLUNTARY ENTRY**

18

19      Defendant argues that the indictment must be dismissed because

20  it fails to allege the mens rea element of the charged offense.

21  Defendant's argument is contrary to <u>United States v. Rivera-Sillas</u>,

22  376 F.3d 887, 891 (9th Cir. 2004), in which the Ninth Circuit rejected

23  Defendant's argument and held that a indictment charging a violation

24  of Section 1326 sufficiently charges general intent where it alleges

25  that a deported alien was subsequently found in the United States

26  without permission.  <u>Id.</u>, 376 F.3d at 892-93.

27      Unlike attempted entry cases, Section 1326 "found in"

28  prosecutions do not require specific intent.  <u>See</u> <u>United States v.</u>

1  Ortiz-Villegas, 49 F.3d 1435, 1437 (9th Cir. 1995) (noting that intent

2  to be in the United States at the moment he or she is located is not

3  necessary); see also United States v. Ayala, 35 F.3d 423, 426 (9th

4  Cir. 1994); Pena-Cabanillas v. United States, 394 F.2d 785, 790 (9th

5  Cir. 1968).

6        In Pena-Cabanillas, the Court noted:

7        The statute in question is not based on any common law
         crime, but is a regulatory statute enacted to assist in the
8        control of unlawful immigration by aliens.  This offense is
         a typical *mala prohibita* offense, [footnote omitted] and
9        since it denounces the doing of an act as criminal, if a
         defendant voluntarily does the forbidden act, the law
10       implies intent. [Cite omitted.] . . . It would be absurd
         for this court to think that Congress left 'intent' out of
11       Section 1326.  Since Congress used no words bearing on
         specific intent, such an element is not part of the statute
12       or of the government's burden of proof.

13  394 at 788-90 (emphasis added).  Defendant's motion, therefore, should

14  be denied.

15        Defendant also argues that the indictment must be dismissed

16  because it fails to allege inspection and admission, or actual and

17  intentional evasion of inspection.  Again, Defendant's argument is

18  contrary to Ninth Circuit precedent.  In Rivera-Sillas, the Court

19  rejected Defendant's identical argument, holding unequivocally that

20  the Government need not plead and prove entry in order to convict a

21  defendant as a Deported Alien Found in the United States.  Id., 376

22  F.3d at 892.

23        Defendant also claims that the indictment fails to state an

24  offense under Section 1326 because it fails to allege a voluntary

25  entry into the United States.  Again, Defendant's argument is

26  foreclosed by Rivera-Sillas, which definitively held that an

27  indictment alleging that the defendant is a Deported Alien Found in

28  the United States need not allege voluntary entry.

C. *SALAZAR-LOPEZ* DOES NOT REQUIRE A DIFFERENT RESULT

Defendant points to the Ninth Circuit's recent opinion in United States v. Salazar-Lopez, 506 F.3d 748, 751 (9th Cir. 2007) as support for his argument that the indictment should be dismissed. In Salazar-Lopez, the Ninth Circuit held that Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), bars a defendant convicted under 18 U.S.C. § 1326 from having his statutory maximum sentence increased for prior convictions, unless the indictment alleges "the date of the removal, or at least the fact that Salazar-Lopez had been removed *after* his conviction." Salazar-Lopez, 506 F.3d at 752. The indictment in the present case, however, specifically alleges that Defendant was removed subsequent to September 3, 1987.

Defendant argues, nonetheless, that there is no assurance that the grand jury found probable cause regarding the allegation of his prior removal date. Defendant provides no basis or authority for his assertion, which is undermined by the plain-reading of the indictment returned by the grand jury in the present case. Without further support, Defendant's argument should be rejected.

### III.

### DEFENDANT CANNOT ESTABLISH A VIOLATION OF HIS RIGHT TO PRESENTMENT

As addressed above, Defendant points to Salazar-Lopez, as support for his argument that the indictment should be dismissed. Defendant argues that there is no assurance that the grand jury found probable cause regarding the allegation of his prior removal date. Defendant, however, reads an unnecessary requirement into Salazar-Lopez and ignores case law that recognizes the district court's authority to determine the timing of prior convictions relative to alleged removals.

1    In United States v. Beng-Salazar, 452 F.3d 1088 (9th Cir. 2006),

2 the Ninth Circuit confirmed that the maximum penalty for illegal

3 reentry is increased from two years to twenty years in prison if the

4 defendant was previously removed subsequent to a conviction for an

5 aggravated felony.  The Ninth Circuit confirmed in United States v.

6 Covian-Sandoval, 462 F.3d 1090 (9th Cir. 2006), that the fact that a

7 defendant was deported or removed subsequent to a felony or aggravated

8 felony conviction must be proved to a jury beyond a reasonable doubt

9 or admitted by a defendant for prosecutions pursuant to 8 U.S.C. §

10 1326(a).  The requirements acknowledged in Covian-Sandoval, however,

11 are satisfied where - as here - the Government alleges in the

12 indictment that the defendant had been removed subsequent to

13 conviction.    Salazar-Lopez, 506 F.3d at 751; United States v.

14 Calderon-Segura, 512 F.3d 1104, 1111 (9th Cir. 2008).

15    In United States v. Martinez-Rodriguez, 472 F.3d 1087, 1092 (9th

16 Cir. 2007), the Ninth Circuit held that where all of the evidence of

17 a prior removal relates to a removal subsequent to the defendant's

18 relevant felony conviction the district court must necessarily find

19 that the evidence constitutes proof beyond a reasonable doubt that the

20 defendant's prior removal was subsequent to his conviction for the

21 relevant felony.  Similarly, in United States v. Lopez, 469 F.3d 1241,

22 1248 (9th Cir. 2006), the Court held that the sentencing court's

23 factual finding that a defendant's removal was subsequent to a felony

24 conviction was not a violation of Apprendi.  The Court specifically

25 held that the temporal sequence of a defendant's prior conviction and

26 removal need not be proven beyond a reasonable doubt.  Lopez, 469 F.3d

27 at 1248  (citing United States v. Castillo-Rivera, 244 F.3d 1010, 1025

28 (9th Cir. 2001).

1    The Government was not required to present evidence of
2  Defendant's prior convictions to the grand jury to justify a maximum
3  penalty of 20 years in prison. Beng-Salazar, 452 F.3d. at 1091.
4  Additionally, because the court at sentencing is not required to find
5  evidence beyond a reasonable doubt of the timing of the prior
6  conviction in relation to the alleged removal date, there is no
7  support for Defendant's argument the timing should be proven to the
8  grand jury. See Lopez, 469 F.3d at 1248.

9    Defendant also demands further assurance that the term "removal"
10  as alleged in the indictment is that from an "immigration sense,"
11  rather than a "colloquial sense." The Ninth Circuit has held that
12  "[w]e apply the presumption that terms not defined should be given
13  their common, everyday meaning." United States v. Young, 458 F.3d
14  998, 1007 (9th Cir. 2006), cert. denied, 127 S. Ct. 1305 (2007).
15  There is no indication that the common meaning of "removal" refers to
16  anything other than that used in the immigration context and
17  referenced in Covian-Sandoval. Indeed, in addressing the language in
18  question, Defendant notes "Presumably, the government added this
19  language in an attempt to comply with the Ninth Circuit's decision in
20  United States v. Covian-Sandoval, 462 F.3d 1090 (9th Cir. 2006)."
21  [Defendant's Motion at 3 n.2.] Defendant's acknowledgment of the
22  plain meaning of the language in the indictment, therefore,
23  establishes that any different reading is unjustified.

24    Finally, Defendant warns that there is no indication which
25  deportation was referenced before the grand jury, such that the
26  Government may prove a different deportation at trial. Defendant,
27  however, fails to explain how such an allegation, if true, would
28  violate his Constitutional rights. An indictment is obtained upon

probable cause that the crime has been committed.  At trial, however,
the Government may prove the violation by additional or different
evidence.  What may not occur is a "constructive amendment" of the
indictment, where the charges, not the facts, differ at trial.  <u>See</u>
<u>United States v. Adamson</u>, 291 F.3d 606, 614 (9th Cir. 2006); <u>United</u>
<u>States v. Von Stoll</u>, 726 F.2d 584, 586 (9th Cir. 1984) ("An amendment
of the indictment occurs when the charging terms of the indictment are
altered, either literally or in effect, by the prosecutor or a court
after the grand jury has last passed upon them.").  Additionally, only
where the evidence offered at trial is "materially different" from
that alleged in the indictment can a potentially prejudicial
"variance" occur.  <u>Von Stoll</u>, 726 at 586.  Here, evidence of any
deportation occurring after the date alleged in the indictment would
not be consistent with the facts alleged in the indictment.
Defendant's fear, therefore, is inconsequential.

**IV**

**THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY
AND THE INDICTMENT SHOULD NOT BE DISMISSED**

**A.    INTRODUCTION**

The present response is the standard response provided by the
U.S. Attorney's Office to the standard motion filed by Federal
Defenders of San Diego, Inc. regarding the above-captioned issue.  It
was the understanding of Government Counsel that an agreement had been
entered by the two offices such that the issue would be pursued on
appeal in only one case.  Because Defendant filed a similar motion,
however, the Government will file its standard response in an
abundance of caution.

Defendant makes contentions relating to two separate instructions

given to the grand jury during its impanelment by District Judge Larry A. Burns on January 11, 2007.[1/]  Although recognizing that the Ninth Circuit in <u>United States v. Navarro-Vargas</u>, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found the two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper to the point that the indictment should be dismissed.

In making his arguments concerning the two separate instructions Defendant urges this Court to dismiss the indictment on two separate basis relating to grand jury procedures both of which were discussed in <u>United States v. Isgro</u>, 974 F.2d 1091 (9th Cir. 1992).  Concerning the first attacked instruction, Defendant urges this Court to dismiss the indictment by exercise its supervising powers over grand jury procedures.  This is a practice the Supreme Court discourages as Defendant acknowledges, citing <u>United States v. Williams</u>, 504 U.S. 36, 50 (1992) ("Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure.").  <u>Isgro</u> reiterated:

> [A] district court may draw on its supervisory powers to dismiss an indictment.  The supervisory powers doctrine "is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by

---

[1/]  Defendant supplies a "Partial Transcript" of the grand jury proceedings which records the instructions to the impaneled grand jurors after the voir dire had been conducted.  [Appendix 1.]  To amplify the record herein, we are supplying a redacted "Supplemental Transcript" which records relevant portions of the voir dire proceedings.  [Appendix 2.]

> the Constitution or Congress to supervise the administration of justice." <u>Before it may invoke this power, a court must first find that the defendant is actually prejudiced by the misconduct.</u> Absent such prejudice-that is, absent " 'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]"-a dismissal is not warranted.

974 F.2d at 1094 (citation omitted, emphasis added). Concerning the second attacked instruction, in an attempt to dodge the holding in <u>Williams</u>, Defendant appears to base his contentions on the Constitution as a reason to dismiss the indictment. [Defendant's Memorandum ("A grand jury so badly misguided is no grand jury at all under the Fifth Amendment").] Concerning that kind of a contention <u>Isgro</u> stated:

> [A] court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding. "Constitutional error is found where the 'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant." Constitutional error may also be found "if [the] defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."

974 F.2d at 1094 (citation omitted)[2]

The portions of the two relevant instructions approved in <u>Navarro-Vargas</u> were:

---

[2]    In <u>Isgro</u> the defendants choose the abrogation of constitutional rights route when asserting that prosecutors have a duty to present exculpatory evidence to grand juries. They did not prevail. 974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights sufficient to support the dismissal of the indictment." (relying on <u>Williams</u>)).

1           You cannot judge the wisdom of the criminal laws
2   enacted by Congress, that is, whether or not there should
    or should not be a federal law designating certain activity
3   as criminal.  That is to be determined by Congress and not
    by you.

4   408 F.3d at 1187, 1202.

5           The United States Attorney and his Assistant United
    States Attorneys will provide you with important service in
6   helping you to find your way when confronted with complex
    legal problems.   It is entirely proper that you should
7   receive this assistance.   If past experience is any
    indication of what to expect in the future, then you can
8   expect candor, honesty, and good faith in matters presented
    by the government attorneys.
9

10  408 F.3d at 1187, 1206.

11          Concerning the "wisdom of the criminal laws" instruction, the

12  court stated it was constitutional because, among other things, "[i]f

13  a grand jury can sit in judgment of wisdom of the policy behind a law,

14  then the power to return a no bill in such cases is the clearest form

15  of 'jury nullification.'"[3/]   408 F.3d at 1203 (footnote omitted).

16  "Furthermore, the grand jury has few tools for informing itself of the

17  policy or legal justification for the law; it receives no briefs or

18  arguments from the parties.  The grand jury has little but its own

19  visceral reaction on which to judge the 'wisdom of the law.'"   Id.

20          Concerning the "United States Attorney and his Assistant United

21

22        [3/]   The Court acknowledged that as a matter of fact jury

23  nullification does take place, and there is no way to control it.  "We

24  recognize and do not discount that some grand jurors might in fact

25  vote to return a no bill because they regard the law as unwise at best

26  or even unconstitutional.  For all the reasons we have discussed,

27  there is no post hoc remedy for that; the grand jury's motives are not

28  open to examination."  408 F.3d at 1204 (emphasis in original.)

States Attorneys" instruction the court stated:

> We also reject this final contention and hold that although this passage may include unnecessary language, it does not violate the Constitution. The "candor, honesty, and good faith" language, when read in the context of the instructions as a whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . . . The instructions balance the praise for the government's attorney by informing the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

408 F.3d at 1207. "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury of the presumption of regularity and good faith that the branches of government ordinarily afford each other."  Id.

**B.  THE EXPANDED "WISDOM OF THE CRIMINAL LAWS" INSTRUCTION WAS PROPER**

Concerning whether the new grand jurors should concern themselves with the wisdom of the criminal laws enacted by Congress, Judge Burns' full instruction stated:

> You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.
>
> But it's not for you to judge the wisdom of the criminal laws enacted by congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is criminal is not up to you.  That's a judgment that congress makes.
>
> And if you disagree with the judgment made by congress, then your option is not to say "Well I'm going to vote against indicting even though I think that the evidence is sufficient" or "I'm going to vote in favor of even though the evidence may be insufficient."  Instead, your obligation is to  contact your congressman or advocate for a change in the laws, but not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting.

1  Partial Transcript pp. 8-9.[4/]

2      Defendant acknowledges that, in line with <u>Navarro-Vargas</u>, "Judge

3  Bums instructed the grand jurors that they were forbidden 'from

4  judg[ing] the wisdom of the criminal laws enacted by Congress; that

5  is, whether or not there should be a federal law or should not be a

6  federal law designating certain activity [as] criminal is not up to

7  you.'" Defendant notes, however, that "[t]he instructions go beyond

8  that, however, and tell the grand jurors that, should 'you disagree

9  with that judgment made by Congress, then your option is not to say

10 'well, I'm going to vote against indicting even though I think that

11 the evidence is sufficient' or 'I'm going to vote in favor of even

12 though the evidence maybe insufficient.'" Defendant contends that

13 this addition to the approved instruction, "flatly bars the grand jury

14 from declining to indict because the grand jurors disagree with a

15 proposed prosecution." Defendant further contends that the flat

16 prohibition was preemptively reinforced by Judge Burns when he

17 "referred to an instance in the grand juror selection process in which

18 he excused three potential jurors," which resulted in his "not only

19 instruct[ing] the grand jurors on his view of their discretion; [but

20

21      [4/]  The Supplemental Transcript supplied herewith (Appendix 2)

22 recounts the excusing of the three individuals. This transcript

23 involves the voir dire portion of the grand jury selection process,

24 and has been redacted, to include redaction of the individual names,

25 to provide only the relevant three incidents wherein prospective grand

26 jurors were excused. Specifically, the pages of the Supplemental

27 Transcript supplied are: page 15, line 10 - page 17, line 18; page 24,

28 line 14 - page 28, line 2; page 38, line 9 - page 44, line 17.

1   his] enforc[ing] that view on pain of being excused from service as
2   a grand juror."[5/]

3       In concocting his theory of why Judge Burns erred, Defendant
4   posits that the expanded instruction renders irrelevant the debate
5   about what the word "should" means.   Defendant contends, "the
6   instruction flatly bars the grand jury from declining to indict
7   because they disagree with a proposed prosecution."  This argument
8   mixes-up two of the holdings in Navarro-Vargas in the hope they will
9   blend into one.  They do not.

10      Navarro-Vargas does permit flatly barring the grand jury from
11  disagreeing with the wisdom of the criminal laws.  The statement,
12  "[y]ou cannot judge the wisdom of the criminal laws enacted by
13  Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at
14  1187, 1202, is not an expression of discretion.  Jury nullification
15  is forbidden although acknowledge as a sub rosa fact in grand jury
16  proceedings.  Id. at 1204.  In this respect Judge Burns was absolutely
17  within his rights, and within the law, when he excused the three
18  prospective grand jurors because of their expressed inability to apply
19  the laws passed by Congress.  Similarly, it was proper for him to
20  remind the impaneled grand jurors that they could not question the
21  wisdom of the laws.  As we will establish this reminder did not
22  pressure the grand jurors to give up their discretion not to return
23  an indictment.  Judge Burns' words cannot be parsed to say that they
24  flatly bars the grand jury from declining to indict because the grand
25  jurors disagree with a proposed prosecution because they do not say
26  that.   That aspect of a grand jury's discretionary power (i.e.
27
28

---

[5/]    See Appendix 2.

disagreement with the prosecution) was dealt with in <u>Navarro-Vargas</u>

in its discussion of another instruction wherein the term "should" was

germane.[6]  408 F.3d at 1204-06 ("'Should' Indict if Probable Cause Is

Found").  This other instruction bestows discretion on the grand jury

not to indict.[7]   In finding this instruction constitutional, the

court stated in words that ring true here, "It is the grand jury's

position in the constitutional scheme that gives it its independence,

not any instructions that a court might offer."  408 F.3d at 1206.

The other instruction was also given by Judge Burns in his own fashion

as follows:

        The function of the grand jury, in federal court at

_____

[6]    That instruction is not at issue here.  It read as follows:

        [Y]our task is to determine whether the government's
    evidence as presented to you is sufficient to cause you to
    conclude that there is probable cause to believe that the
    accused is guilty of the offense charged.   To put it
    another way, you should vote to indict where the evidence
    presented to you is sufficiently strong to warrant a
    reasonable person's believing that the accused is probably
    guilty of the offense with which the accused is charged.

408 F.3d at 1187.

[7]    The court upheld the instruction stating:

        This instruction does not violate the grand jury's
    independence.   The language of the model charge does not
    state that the jury "must" or "shall" indict, but merely
    that it "should" indict if it finds probable cause.   As a
    matter of pure semantics, it does not "eliminate discretion
    on the part of the grand jurors," leaving room for the
    grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in <u>United States  v. Marcucci</u>,

299 F.3d 1156, 1159 (9th Cir.2002) (per curiam)).  In this respect,

the grand jury has even greater powers of nonprosecution than the

executive because there is, literally, no check on a grand jury's

decision not to return an indictment.  408 F.3d at 1206.

1
2
3
4

least, is to determine probable cause.  That's the simple
formulation that I mentioned to a number of you during the
jury selection process.  Probable cause is just an analysis
of whether a crime was committed and there's a reasonable
basis to believe that an whether a certain person is
associated with the commission of that crime, committed it
or helped commit it.

5
6
7
8
9

    If the answer is yes, then as grand jurors your
function is to find that the probable cause is there, that
the case has been substantiated, and it should move
forward.  If conscientiously, after listening to the
evidence, you say "No, I can't form a reasonable belief has
anything to do with it, then your obligation, of course,
would be to decline to indict, to turn the case away and
not have it go forward.

10 Partial Transcript pp. 3-4.

11
12
13
14

    Probable cause means that you have an honestly held
conscientious belief and that the belief is reasonable that
a federal crime was committed and that the person to be
indicted was somehow associated with the commission of that
crime.  Either they committed it themselves or they helped
someone commit it or they were part of a conspiracy, an
illegal agreement, to commit that crime.

15
16
17

    To put it another way, you should vote to indict when
the evidence presented to you is sufficiently strong to
warrant a reasonable person to believe that the accused is
probably guilty of the offense which is proposed.

18 Partial Transcript p. 23.

19   While the new grand jurors were told by Judge Burns that they

20 could not question the wisdom of the criminal laws per <u>Navarro-Vargas</u>,

21 they were also told by Judge Burns they had the discretion not to

22 return an indictment per <u>Navarro-Vargas</u>.  Further, if a potential

23 grand juror could not be dissuaded from questioning the wisdom of the

24 criminal laws, that grand juror should be dismissed as a potential

25 jury nullification advocate.  <u>See</u>  <u>Merced v. McGrath</u>, 426 F.3d 1076,

26 1079-80 (9th Cir. 2005).  Thus, there was no error requiring dismissal

27 of this indictment or any other indictment by this Court exercising

28 its supervisory powers.

1    Further, a reading of the dialogues between Judge Burns and the

2    three excused jurors found in the Supplemental Transcript excerpts

3    (Appendix 2) reflects a measured, thoughtful, almost mutual decision,

4    that those three individuals should not serve on the grand jury

5    because of their views.  Judge Burns' reference back to those three

6    colloquies cannot be construed as pressuring the impaneled grand

7    jurors, but merely bespeaks a reminder to the grand jury of their

8    duties.

9    Finally, even if there was an error, Defendant has not

10   demonstrated he was actually prejudiced thereby, a burden he has to

11   bear.  "Absent such prejudice-that is, 'absent 'grave' doubt that the

12   decision to indict was free from the substantial influence of [the

13   misconduct]' - a dismissal is not warranted."   Isgro, 974 F.2d at

14   1094.

15   **C.   THE ADDITION TO THE "UNITED STATES ATTORNEY AND HIS
          ASSISTANT UNITED STATES ATTORNEYS" INSTRUCTION DID NOT**
16        **VIOLATE THE CONSTITUTION**

17   Concerning the new grand jurors' relationship to the United

18   States Attorney and the Assistant U.S. Attorneys, Judge Burns

19   variously stated:

20       [T]here's a close association between the grand jury and
         the U.S. Attorney's Office.
21       . . .
         You'll work closely with the U.S. Attorney's Office in your
22       investigation of cases.

23   Partial Transcript p. 11

24       [I]n my experience here in the over 20 years in this court,
         that kind of tension does not exist on a regular basis,
25       that I can recall, between the U.S. Attorney and the grand
         juries.  They generally work together.
26

27   Partial Transcript p. 12.

28       Now, again, this emphasizes the difference between the

19                           08CR1353-LAB

function of the grand jury and the trial jury.  You're all
about probable cause.  If you think that there's evidence
out there that might cause you to say "well, I don't think
probable cause exists," then it's incumbent upon you to
hear that evidence as well.  As I told you, in most
instances, the U.S. Attorneys are duty-bound to present
evidence that cuts against what they may be asking you to
do if they're aware of that evidence.

Partial Transcript p. 20.[8]/

As a practical matter, you will work closely with
government lawyers.  The U.S. Attorney and the Assistant
U.S. Attorneys will provide you with important services and
help you find your way when you're confronted with complex
legal matters.  It's entirely proper that you should
receive the assistance from the government lawyers.

But at the end of the day, the decision about whether
a case goes forward and an indictment should be returned is
yours and yours alone.  If past experience is any
indication of what to expect in the future, then you can
expect that the U.S. Attorneys that will appear in front of
you will be candid, they'll be honest, that they'll act in
good faith in all matters presented to you.

Partial Transcript pp. 26-27.

Commenting on the phrase, "the U.S. Attorneys are duty-bound to
present evidence that cuts against what they may be asking you to do
if they're aware of that evidence," Defendant proposes that by making
that statement, "Judge Burns also assured the grand jurors that
prosecutors would present to them evidence that tended to undercut
probable cause."  Defendant then ties this statement to the later

_____

[8]/    Just prior to this instruction, Judge Burns had informed the
grand jurors that:

[T]hese proceedings tend to be one-sided necessarily  .  .
.  .  Because it's not a full-blown trial, you're likely in
most cases not to hear the other side of the story, if
there is another side to the story.

Partial transcript p. 19.

1  instruction which "advis[ed] the grand jurors that they 'can expect

2  that the U.S. Attorneys that will appear in front of [them] will be

3  candid, they'll be honest, and . . . they'll act in good faith in all

4  matters presented to you.'"   [Id.]   Thereafter, Defendant contends:

5          These instructions create a presumption that, in cases
       where the prosecutor does not present exculpatory evidence,
6      no exculpatory evidence exists. A grand juror's reasoning,
       in a case in which no exculpatory evidence was presented,
7      would proceed along these lines:

8          (1)   I  have  to  consider  evidence  that  undercuts
             probable cause.
9
           (2)   The  candid,  honest,  duty-bound  prosecutor
10            would,  in  good  faith,  have  presented  any
             such evidence to me, if it existed.
11
           (3)   Because no such evidence was presented to me, I
12            may conclude that there is none.

13     Even if some exculpatory evidence were presented, a grand
       juror would necessarily presume that the evidence presented
14     represents  the  universe  of  all  available  exculpatory
       evidence;  if  there  was  more,  the  duty-bound  prosecutor
15     would have presented it.

16         The instructions therefore discourage investigation --
       if exculpatory evidence were out there, the prosecutor
17     would present it, so investigation is a waste of time and
       provide  additional  support  to  every  probable  cause
18     determination: i.e., this case may be week [sic], but I
       know  that  there  is  nothing  on  the  other  side  of  the
19     equation because it was not presented.   A grand jury so
       badly misguided is no grand jury at all under the Fifth
20     Amendment.

21  [Defendant's Memorandum.] (emphasis added.)[9]/

22

23  _____

24      [9]/    The term "presumption" is too strong a word in this setting.

     The term "inference" is more appropriate.  See McClean v. Moran, 963
25
     F.2d 1306 (9th Cir. 1992) which states there are (1) permissive
26
     inferences; (2) mandatory rebuttable presumptions; and (3) mandatory
27
     conclusive  presumptions,  and  explains  the  difference  between  the
28
     three.  963 F.2d at 1308-09 (discussing Francis v. Franklin, 471 U.S.

                          21                    08CR1353-LAB

Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," however, is directly contradicted by <u>United States v. Williams</u>, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all '<u>substantial</u> exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it.") (emphasis added);[10/] <u>see also</u>, <u>United States v. Haynes</u>, 216 F.3d 789, 798 (9th Cir.  2000) ("Finally, their challenge to the government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because prosecutors have no obligation to disclose '<u>substantial</u> exculpatory

---

314 (1985); <u>Sandstrom v. Montana</u>, 442 U.S. 510 (1979); and <u>Ulster County Court v. Allen</u>, 442 U.S. 140, 157 & n. 16 (1979)).  <u>See also</u> <u>United States v. Warren</u>, 25 F.3d 890, 897 (9th Cir.1994).

[10/]    Note that in <u>Williams</u> the Court established:

Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury. Instead, building on our statement that the federal courts "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress," he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts' "supervisory power."

504 U.S. at 45 (citation omitted).  The Court concluded, "courts have no authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority over their own proceedings."  504 U.S. at 55; <u>see also</u>, <u>United States v. Haynes</u>, 216 F.3d 789, 797-98 (9th Cir.  2000).  However, the Ninth Circuit in <u>Isgro</u> used <u>Williams</u>' holding that the supervisory powers would not be invoked to ward off an attack on grand jury procedures couched in constitutional terms.  974 F.2d at 1096.

1  evidence' to a grand jury.") (citing <u>Williams</u>) (emphasis added).

2      However, the analysis does not stop there.  Prior to assuming his

3  judicial duties, Judge Burns was a member of the United States

4  Attorney's Office, and made appearances in front of the federal grand

5  jury.[11/]  As such he was undoubtedly aware of the provisions in the

6  United States Attorneys' Manual ("USAM"),[12/] which provides as follows:

7          In <u>United States v. Williams</u>, 112 S.Ct. 1735 (1992),
       the Supreme Court held that the Federal courts' supervisory
8       powers over the grand jury did not include the power to
       make a rule allowing the dismissal of an otherwise valid
9       indictment where the prosecutor failed to introduce
       substantial exculpatory evidence to a grand jury. It is the
10      <u>policy</u> of the Department of Justice, however, that when a
       prosecutor conducting a grand jury inquiry is personally
11      aware of <u>substantial evidence that directly negates the</u>
       <u>guilt</u> of a subject of the investigation, the prosecutor
12      <u>must present or otherwise disclose</u> such evidence to the
       grand jury before seeking an indictment against such a
13      person. While a failure to follow the Department's policy
       should <u>not result in dismissal of an indictment</u>, appellate
14      courts <u>may refer violations of the policy to the Office of</u>
       <u>Professional Responsibility</u> for review.

15

16  USAM Section 9-11.233 (emphasis added.)[13/]  This policy was reconfirmed

17

18  _____

     [11/]    He recalled those days when instructing the new grand
19
   jurors.  [Partial Transcript pp. 12, 14-16, 17-18.]
20
     [12/]    The USAM is available on-line at:
21
   www.usdoj.gov/usao/eousa/foia_reading_room/usam/index.html
22
     [13/]    <u>See</u>:
23
   www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/11mcrm.html
24
25  Even if Judge Burns did not know of this provision in the USAM

26  while he was a member of the United States Attorney's Office, because

   of the accessability of the USAM on the internet, as the District
27
   Judge overseeing the grand jury he certainly could determine the
28
   required duties of the United States Attorneys appearing before the

in USAM 9-5.001, Policy Regarding Disclosure of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the policy that requires prosecutors to disclose 'substantial evidence that directly negates the guilt of a subject of the investigation' to the grand jury before seeking an indictment, see USAM § 9-11.233." (Emphasis added.)[14]

The fact that Judge Burns' statement contradicts Williams, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant. No improper presumption/inference was created when Judge Burns reiterated what he knew to be a self-imposed duty to the new grand jurors. Simply stated, in the vast majority of the cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because no "substantial" exculpatory evidence exists.[15]  If it does

_____

grand jury from that source.

[14]  See:

www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm

Similarly, this new section does not bestow any procedural or substantive rights on defendants.

> Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶ "E."

[15]  Recall Judge Burns also told the grand jurors that:

> [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

1  exist, as mandated by the USAM, the evidence should be presented to
2  the grand jury by the Assistant U.S. Attorney upon pain of possibly
3  having his or her career destroyed by an Office of Professional
4  Responsibility investigation.  Even if there is some nefarious slant
5  to the grand jury proceedings when the prosecutor does not present any
6  "substantial" exculpatory evidence, because there is none, the
7  negative inference created thereby in the minds of the grand jurors
8  is legitimate.  In cases such as Defendant's, the Government has no
9  "substantial" exculpatory evidence generated from its investigation
10  or from submissions tendered by the defendant.[16/]  There is nothing
11  wrong in this scenario with a grand juror inferring from this state-
12  of-affairs that there is no "substantial" exculpatory evidence, or
13  even if some exculpatory evidence were presented, the evidence
14  presented represents the universe of all available exculpatory
15  evidence.

16      Further, just as the instruction language regarding the United
17  States Attorney attacked in Navarro-Vargas was found to be
18  "unnecessary language [which] does not violate the Constitution," 408
19  F.3d at 1207, so too the "duty-bound" statement was unnecessary when
20

21      [16/]    Realistically, given "that the grand jury sits not to
22  determine guilt or innocence, but to assess whether there is adequate
23  basis for bringing a criminal charge [i.e. only finding probable
24  cause]," Williams, 504 U.S. at 51 (citing United States v. Calandra,
25  414 U.S. 338, 343-44 (1974)), no competent defense attorney is going
26  to preview the defendant's defense story prior to trial assuming one
27  will be presented to a fact-finder.  Therefore, defense submissions
28  to the grand jury will be few and far between.

charging the grand jury concerning its relationship with the United

States Attorney and her Assistant U.S. Attorneys, and does not violate

the Constitution.    In <u>Isgro</u>, the Ninth Circuit, while reviewing

<u>Williams</u>, established that there is nothing in the Constitution which

requires a prosecutor to give the person under investigation the right

to present anything  to the grand jury (including his or her testimony

or other exculpatory evidence), and the absence of that information

does not require dismissal of the indictment.    974 F.2d at 1096

("<u>Williams</u> clearly rejects the idea that there exists a right to such

'fair' or 'objective' grand jury deliberations.").    That the USAM

imposes a duty on United States Attorneys to present "substantial"

exculpatory evidence to the grand jury is irrelevant since by its own

terms the USAM excludes defendants from reaping any benefits from the

self-imposed policy.[17/]    Therefore, while the "duty-bound" statement

was an interesting tidbit of information, it was  unnecessary in terms

of advising the grand jurors of their rights and responsibilities, and

does not cast an unconstitutional pall upon the instructions which

requires dismissal of the indictment in this case or any case.    The

grand jurors were repeatedly instructed by Judge Burns that, in

essence, the United Sates Attorneys are "good guys," which was

authorized by <u>Navarro-Vargas</u>.    408 F.3d at 1206-07 ("laudatory

comments . . . not vouching for the prosecutor").    But he also

---

[17/]    The apparent irony is that although an Assistant U.S.

Attorney will not lose a case for failure to present exculpatory

information to a grand jury per <u>Williams</u>, he or she could lose his or

her job with the United States Attorney's Office for such a failure

per the USAM.

1    repeatedly "remind[ed] the grand jury that it stands between the

2    government and the accused and is independent," which was also

3    required by Navarro-Vargas. 408 F.3d at 1207. In this context the

4    unnecessary "duty-bound" statement does not mean the instructions were

5    constitutionally defective requiring dismissal of this indictment or

6    any indictment.

7         The "duty bound" statement constitutional contentions raised by

8    Defendant do not indicate that the "'structural protections of the

9    grand jury have been so compromised as to render the proceedings

10   fundamentally unfair, allowing the presumption of prejudice' to the

11   defendant," and "[the] defendant can[not] show a history of

12   prosecutorial misconduct that is so systematic and pervasive that it

13   affects the fundamental fairness of the proceeding or if the

14   independence of the grand jury is substantially infringed." Isgro,

15   974 F.2d at 1094 (citation omitted). Therefore, this indictment, or

16   any other indictment, need not be dismissed.

17                                    **V**

18        **THIS COURT NEED NOT DISMISS ESSENTIAL LANGUAGE AS SURPLUSAGE**

19        Defendant argues the Government must either accept that it must

20   prove the date of his prior deportation as an additional element of

21   the offense charged or strike language referring to the date of

22   deportation as surplusage. Defendant's argument, however, is not

23   supported by applicable law.

24        Allegations in the indictment that are not necessary to establish

25   a violation of a statute may be disregarded as surplusage if the

26   remaining allegations are sufficient to charge a crime. United States

27   v. Fernandez, 388 F.3d 1199, 1221 (9th Cir. 2004). Language in an

28   indictment that is legally essential to the charge in the indictment,

however, cannot be stricken out as surplusage.  <u>United States v. Root</u>, 366 F.2d 377, 381 (9th Cir. 1966).  Here, the court need not enter the semantic wrangling of whether Defendant's prior deportation constitutes an "element" or simply language that is essential to proving the charge.  The <u>Covian-Sandoval</u> and <u>Beng-Salazar</u> Courts have made clear that the Government must allege in the indictment that the defendant had been removed post-conviction in order to establish a 20-year maximum sentence.  Because of the legal necessity of the language relating to the date of Defendant's prior deportation, it cannot be stricken as surplusage.  <u>Fernandez</u>, 388 F.3d at 1221; <u>Root</u>, 366 F.2d at 381.

In further support of his argument, however, Defendant returns to the oft-rejected argument that this court should ignore binding case law as unconstitutional.  In <u>Almendarez-Torres v. United States</u>, 523 U.S. 224 (1998), the Supreme Court explicitly held that facts related to recidivism need not be presented to a jury and proven beyond a reasonable doubt, even if they result in a dramatic increase in a defendant's sentence.  <u>Id.</u> at 226.  The <u>Beng-Salazar</u> Court upheld the continuing viability of <u>Almendarez-Torres</u> and the statutory scheme of 8 U.S.C. § 1326.  <u>Beng-Salazar</u>, 452 F.3d. at 1091.  The Ninth Circuit further confirmed in <u>Covian-Sandoval</u> that the fact that a defendant was deported or removed subsequent to a felony or aggravated felony conviction must be proved to a jury beyond a reasonable doubt or admitted by a defendant for prosecutions pursuant to 8 U.S.C. § 1326(a), but that such requirements are satisfied where the Government alleges in the indictment that the defendant had been removed on a specific, post-conviction date.  <u>Salazar-Lopez</u>, 506 F.3d at 751. Because the controlling case law is not on Defendant's side,

therefore, his argument must be rejected.

## VI

## THE PRODUCTION OF GRAND JURY TRANSCRIPTS IS NOT REQUIRED

Defendant requests this court order the production of grand jury transcripts so that he may explore issues for his appellate record. Defendant, however, provides insufficient legal and factual support for his request.

The Government must produce the grand jury transcripts of a witness after the witness testifies on direct examination at trial or a relevant court proceeding. United States v. Taylor, 802 F.2d 1108, 1118 (9th Cir. 1986). Alternatively, the district court should only order disclosure of grand jury transcripts "when the party seeking them has demonstrated that a particularized need exists . . . which outweighs the policy of secrecy." United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986).

As argued above, Defendant has made allegations which, even if proven accurate, do not establish a violation of his rights. Regardless, Defendant has no basis to believe any violation has occurred and must, therefore, be precluded from engaging in a "fishing expedition." See United States v. Kim, 577 F.2d 473, 478 (9th Cir. 1978) (holding that desire to engage in "fishing expedition" does not constitute required "particularized need" to produce grand jury transcripts). Similar to the defendant in Walczak, Defendant's allegations are "speculative" as he has alleged no facts to support his suspicion that grand jury transcripts would provide the evidence he seeks. See Walczak, 783 F.2d at 857. Without more, this court should deny Defendant's request for any discovery until it is otherwise discoverable as Jencks material.

**VII**

**DEFENDANT'S STATEMENTS NEED NOT BE SUPPRESSED
AND NO HEARING IS NECESSARY**

**A.    DEFENDANT'S STATEMENTS ARE ADMISSIBLE**

Defendant contends that his statements obtained by Border Patrol agents should be suppressed due to <u>Miranda</u> violations.  As indicated above, Defendant admitted he is a citizen of Mexico without proper documents to enter or remain in the United States.  Defendant was neither in custody, nor subjected to interrogation by Border Patrol agents at their first encounter.

A custodial interrogation is a prerequisite to the attachment of <u>Miranda</u> rights.  <u>See</u> <u>Illinois v. Perkins</u>, 496 U.S. 292, 297 (1990) ("It is the premise of <u>Miranda</u> that the danger of coercion results from the interaction of custody and official interrogation.").  To determine if a suspect is in custody, a court must assess the objective circumstances of the situation from the prospective of a reasonable person in the suspect's position. <u>See</u> <u>Berkemer v. McCarty</u>, 468 U.S. 420, 442 (1984).

<u>United States v. Galindo-Gallegos</u>, 244 F.3d 728 (9th Cir. 2001) is instructive here.  In <u>Galindo-Gallegos</u>, Border Patrol agents stopped several aliens running near, but north of, the border between the United States and Mexico, and questioned them regarding their citizenship.  In determining whether custodial interrogation took place, the Court first noted the following:

> The material factual circumstances here are that (1) the questioning took place out of doors; (2) the location was isolated, away from view by the general public, but there were 15 or 20 aliens and only two law enforcement officials; (3) no one was handcuffed, but everyone was required to sit on the ground; (4) the questions were a necessary predicate to letting anyone go free, but were

1
2
3
4

> also reasonably likely to elicit incriminating admissions
> by those for whom the facts were incriminating; and (5) the
> group of aliens had been caught running in an area very
> near the border, and Galindo-Gallegos had persisted in
> running away from the border patrol but was caught and
> returned to the group that had been seated on the ground.

5  Galindo-Gallegos, 244 F.3d at 734.  Based on these facts, the court

6  upheld the admission of the statements, without Miranda warnings,

7  because those facts showed a sufficiently public apprehension.

8       Here, the apprehension of Defendant took place in a public place

9  with another individual present, which is sufficient to "reduce the

10 ability of an unscrupulous policeman to use illegitimate means to

11 elicit self-incriminating statements and diminishes the motorist's

12 fear that, if he does not cooperate, he will be subjected to abuse."

13 Id. (quoting McCarty, 468 U.S. at 438).  Under both Galindo-Gallegos

14 and Berkemer, therefore, no custodial interrogation occurred.

15      Defendant further ignores that statements made in response to

16 routine investigative questions and on-the-scene questions at the

17 border are admissible.  See, e.g., United States v. Leasure, 122 F.3d

18 837, 840 (9th Cir. 1997) (Miranda warnings not required where Customs

19 inspector at border questioned defendant upon entry into the United

20 States); Vickers v. Stewart,144 F.3d 613, 615 (9th Cir. 1994) (no

21 interrogation when prison guard pulled defendant from scene of the

22 fire and asked what happened).  Defendant was asked his citizenship

23 status.  This type of questioning is border-related and routine, and

24 does not amount to interrogation as conceptualized in Miranda and its

25 progeny.  The statement, therefore, is admissible.

26 //

27 //

28 //

1    **B.    DEFENDANT'S REQUEST FOR AN EVIDENTIARY HEARING SHOULD BE**
      **DENIED**

2

3    Defendant requests an evidentiary hearing regarding his

4    suppression motion.  Under Ninth Circuit and Southern District

5    precedent, as well as a Southern District Local Rule, however, a

6    defendant is entitled to an evidentiary hearing on a motion to

7    suppress only when the defendant adduces specific facts sufficient to

8    require the granting of defendant's motion.  See United States v.

9    Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (where "defendant, in his

10   motion to suppress, failed to dispute any material fact in the

11   government's proffer, . . . . the district court was not required to

12   hold an evidentiary hearing"); United States v. Moran-Garcia,

13   783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (boilerplate motion

14   containing indefinite and unsworn allegations was insufficient to

15   require evidentiary hearing on defendant's motion to suppress

16   statements); Crim. L. R. 47.1.  There has been no such proffer by

17   Defendant here.

18   Requiring a declaration from a defendant in no way compromises

19   defendant's constitutional rights, as declarations in support of a

20   motion to suppress cannot be used by the government at trial over a

21   defendant's objection.  See Batiste, 868 F.2d at 1092 (proper to

22   require declaration in support of Fourth Amendment motion to

23   suppress); Moran-Garcia, 783 F. Supp. at 1271-74 (extending Batiste

24   to Fifth Amendment motion to suppress).  Nor is it reasonable to

25   believe that a defendant will have less information than the

26   Government, and so should not be required to provide proof to support

27   a motion.  See Batiste, 868 F.2d at 1092.  At least in the context of

28   motions to suppress statements, which require police misconduct

1  incurred by Defendant while in custody, Defendant certainly should be
2  able to provide the facts supporting the claim of misconduct.  Without
3  such a proffer, no need for an evidentiary hearing has been made.

4      Moreover, any argument that 18 U.S.C. § 3501 requires an
5  evidentiary hearing in every case is of no merit.  Section 3501
6  requires only that the Court make a pretrial determination of
7  voluntariness "out of the presence of the jury."  Nothing in section
8  3501 betrays any Congressional intent to alter the longstanding rule
9  vesting the form of proof on matters for the court in the discretion
10  of the court.  See Batiste, 868 F.2d at 1092 ("Whether an evidentiary
11  hearing is appropriate rests in the reasoned discretion of the
12  district court.") (citation and quotation marks omitted).  Therefore,
13  no evidentiary hearing is warranted in this case.

14      The Ninth Circuit has expressly stated that a government proffer
15  based on the statement of facts attached to the complaint is alone
16  adequate to defeat a motion to suppress where the defense fails to
17  adduce specific and material facts.  See Batiste, 868 F.2d at 1092.
18  As Defendant has failed to provide a declaration alleging specific and
19  material facts, the Court would be within its discretion to deny
20  Defendant's motion based solely on the statement of facts attached to
21  the complaint in this case, without any further showing by the
22  Government.
23  //
24  //
25  //
26  //
27  //
28  //

1                                    **VIII**

2          **THE GOVERNMENT WILL PROVIDE DISCOVERY AS PROVIDED HEREIN**

3          Except as described below, the Court should deny Defendant's

4   discovery requests.

5               **1.    Rule 16(a)(1)(A): Defendant's Statements**

6          The Government has disclosed all known written and statements of

7   the Defendant and the substance of oral statements made by the

8   Defendant in response to questions by government agents in this case.

9          **2.    Documents, Arrest Reports, and Tangible Evidence**

10         In accordance with obligations under Rule 16(a)(1)(C) and 16(c),

11  the Government will permit the Defendant to inspect and copy or

12  photograph all books, papers, documents, photographs, tangible

13  objects, buildings, or places, or portions thereof, which are within

14  or may come within the possession, custody, or control of the

15  Government, and which are material to the preparation of the

16  Defendant's defense or are intended for use by the Government as

17  evidence-in-chief at trial or were obtained from or belong to the

18  Defendant.

19             **3.    Rule 16, and Brady: For Exculpatory Evidence**

20         The Government is well aware of, and will fully perform, its duty

21  under, <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and <u>United States v.</u>

22  <u>Agurs</u>, 427 U.S. 97 (1976). Accordingly, the Government will disclose

23  exculpatory evidence within its possession that is material to the

24  issue of guilt. Defendant is not entitled to all evidence known or

25  believed to exist which is, or may be, favorable to the accused, or

26  which pertains to the credibility of the Government's case. As the

27  Ninth Circuit Court of Appeals stated in <u>United States v. Gardner</u>, 611

28  F.2d 770 (9th Cir. 1980):

> [T]he prosecution does not have a constitutional duty to
> disclose every bit of information that might affect the
> jury's decision; it need only disclose information
> favorable to the defense that meets the appropriate
> standard of materiality.

<u>Id</u>. at 774-75 (citations omitted).   <u>See</u> <u>also</u> <u>United States v.</u>
<u>Sukumolachan</u>, 610 F.2d 685, 687 (9th Cir. 1980) (the Government is not
required to create non-existent exculpatory material); <u>United States</u>
<u>v. Flores</u>, 540 F.2d 432, 438 (9th Cir. 1976) (<u>Brady</u> does not create
any pretrial discovery privileges not contained in the Federal Rules
of Criminal Procedure).

### 4.    Rule 16, and Brady: For Sentencing

The Government is also well aware of, and will fully perform, its
duty under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>United States v.</u>
<u>Agurs</u>, 427 U.S. 97 (1976) regarding evidence pertaining to punishment.
Accordingly, and consistent with its position stated above, the
Government will disclose exculpatory evidence within its possession
that is material to the issue of punishment.

### 5.    Rule 16(a)(1)(A), (B), and (C): Prior Record

The Government has already provided Defendant with arrest
reports, judgment and conviction documents for prior offenses and
other evidence of prior bad acts pursuant to Rules 16(a)(1)(A), (B)
and (C).

### 6.    Rule 16(a)(1)(C) and Fed. R. Evid. 404(b): Prior
### Arrests, Convictions Or Bad Acts

The Government reserves the right to introduce such prior bad
acts, and will address such evidence and its intentions in motions <u>in</u>
<u>limine</u> to be filed separately according to the Court's scheduling
orders.

//

1        **7.    Rule 16(a)(1)(C): Evidence Seized**

2        In accordance with obligations under Rule 16(a)(1)(C) and 16(c),

3   the Government will permit the Defendant to inspect and copy or

4   photograph all books, papers, documents, photographs, tangible

5   objects, buildings, or places, or portions thereof, which are within

6   or may come within the possession, custody, or control of the

7   Government, and which are material to the preparation of the

8   Defendant's defense or are intended for use by the Government as

9   evidence-in-chief at trial or were obtained from or belong to the

10  Defendant.

11       **8.    _Henthorn_ Material**

12       Pursuant to United States v. Henthorn, 831 F.2d 29, 30 (9th Cir.

13  1991), the Government will comply with its responsibilities to review

14  the personnel files of its agents who may serve as witnesses; and the

15  Government will disclose any impeachment information regarding

16  criminal investigations.  The Government is presently unaware of any

17  criminal involvement by any prospective government witness, or that

18  any prospective government witness is under investigation.    The

19  Government objects to Defendant's request that the Assistant United

20  States Attorney personally review all personnel files of prospective

21  witnesses.

22       **9.    Expert Witnesses**

23       The Government will meet obligations pursuant to Fed. R. Crim.

24  P. 16(a)(1)(E) to disclose information regarding expert witnesses.

25  The Government anticipates presenting testimony of a fingerprint

26  examination expert witness who will identify Defendant's fingerprints

27  on documents from his A-file.  The Government will produce details

28  regarding the nature of the expert's testimony, and the qualifications

1  of the expert when a trial date is scheduled and any expert is
2  obtained.

3          **10.   Impeachment Evidence**

4      The Government is unaware of any impeachment evidence of a
5  prospective government witness is biased or prejudiced against
6  Defendant.  The Government is aware of, and will comply with, its
7  obligations regarding impeachment evidence pursuant to <u>Brady v.</u>
8  <u>Maryland</u>, 373 U.S. 83 (1963), and <u>United States v. Agurs</u>, 427 U.S. 97
9  (1976).

10         **11.   Evidence of Criminal Investigations of Witnesses**

11     The Government is currently unaware of any pending criminal
12  investigations against a prospective government witness is biased or
13  prejudiced against Defendant.  The Government will comply with its
14  obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and provide
15  such evidence if and when it becomes known.

16         **12.   Evidence of Bias, Motive to Lie of Government**
                   **Witnesses.**
17

18     The Government is unaware of any evidence indicating that a
19  prospective government witness is biased or prejudiced against
20  Defendant.  The Government is also unaware of any evidence that
21  prospective witnesses have a motive to falsify or distort testimony.
22  The Government is aware of, and will comply with, its obligations to
23  provide such evidence pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83
24  (1963), and <u>United States v. Agurs</u>, 427 U.S. 97 (1976)

25         **13.   Evidence of Criminal Investigation of Witnesses**

26     The Government is unaware of any evidence indicating that a
27  prospective government witness is currently under criminal
28  investigation by the Government.

**14.   Evidence Affecting Perception, Recollection, Ability
        to Communicate, or Veracity**

As addressed in items 12-14 above, the Government is unaware of
any evidence affecting the perception, recollection, ability to
communicate, or veracity of any prospective Government witness.  The
Government will provide such evidence pursuant to <u>Brady v. Maryland</u>,
373 U.S. 83 (1963), if and when it comes to light.

**15.   The Government Is Unaware of Favorable Defense
        Witnesses**

The Government is unaware of any witness who made a favorable
statement concerning the Defendant, or of any statement that may be
favorable to Defendant's defense, which have not already been provided
in discovery.

**16.   Jencks Act**

Consistent with the Jencks Act, 18 U.S.C. § 3500, the Defendant
is not entitled to disclosure of witness statements prior to the
witness testifying on direct examination at trial.  The Government
must produce these statements only after the witness testifies on
direct examination.  <u>United States v. Taylor</u>, 802 F.2d 1108, 1118 (9th
Cir. 1986); <u>United States v. Mills</u>, 641 F.2d 785, 790 (9th Cir. 1981).
Indeed, even material believed to be exculpatory and, therefore,
subject to disclosure under the <u>Brady</u> doctrine, if contained in a
witness statement subject to the Jencks Act, need not be revealed
until such time as the witness statement is disclosed under the Act.
<u>See</u> <u>United States v. Bernard</u>, 623 F.2d 551, 556 (9th Cir. 1979).

The Government reserves the right to withhold the statements of
any particular witnesses until after they testify.  However,
notwithstanding any statements the Government deems necessary to

withhold, the Government will disclose witness statements prior to trial in as timely a manner as practicable, provided defense counsel has complied with his obligations under Rules 12.1, 12.2, 16 and 26.2 of the Federal Rules of Criminal Procedure, and provided that defense counsel submitted all reciprocal discovery and "reverse Jencks" statements.

The Government will comply with its Rule 26.2 obligation to produce for the Defendant's examination statements of witnesses in the Government's possession after, or shortly before, such witnesses testify on direct examination.  The Government objects to the Defendant's request that such statements be produced at this time. Similarly, if Rule 12(i) becomes relevant pursuant to suppression proceedings, the Government will comply with obligations to produce statements in accordance with Rule 26.1.

### 17.  **The Government Will Comply With _Giglio_**

The Government has not made any promises, express or implied, to any government witnesses in exchange for their testimony in this case. Therefore, the Government is currently unaware of any discoverable impeachment information pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

### 18.  **Agreements Between the Government and Witnesses**

Consistent with its obligations pursuant to <u>Giglio</u>, stated above, the Government will provide any agreements with witnesses.  To date, however, none exist.

### 19.  **Informants and Cooperating Witnesses**

Consistent with its acknowledged obligation to provide discovery of prospective witnesses' statements, the Government would provide the requested evidence.  To date, however, the Government has not employed

1  any informants or cooperating witnesses in the present case.

2                                    IX

3  **THIS COURT SHOULD CONDITIONALLY GRANT LEAVE TO FILE FURTHER MOTIONS**

4       Although the Government does not oppose in principle Defendant's

5  request to file further motions, the Government would oppose the

6  filing of any further substantive motions that would not be

7  entertained by the court until the time set aside for motions in

8  limine. If the defendant foresees the need to file further

9  substantive motions, the Government respectfully requests that the

10 defendant request, and the Court set, a separate date for an

11 additional motion hearing, and that any motions in limine and trial

12 not be set until the conclusion of such hearing.

13                                    X

14                              **CONCLUSION**

15      Based on the foregoing, the Court should deny Defendant's motions

16 except where otherwise noted regarding his requests for discovery and

17 leave to file further motions.

18      DATED: June 10, 2008

19                                      Respectfully submitted,

20                                      KAREN P. HEWITT
                                        United States Attorney
21
                                        s/ Christopher P. Tenorio
22                                      CHRISTOPHER P. TENORIO
                                        Assistant U.S. Attorney
23

24

25

26

27

28

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10    UNITED STATES OF AMERICA,      )   Criminal Case No.  08CR1353-LAB
                                     )
11              Plaintiff,           )        **CERTIFICATE OF SERVICE**
                                     )
12        v.                         )
                                     )
13    FELIPE CARRASCO-RIVERA,        )
                                     )
14              Defendant.           )
      _____)

15

16    IT IS HEREBY CERTIFIED that:

17        I, CHRISTOPHER P. TENORIO, am a citizen of the United States and

18    am at least eighteen years of age.  My business address is 880 Front

19    Street, Room 6293, San Diego, California 92101-8893.

20        I am not a party to the above-entitled action.  I have caused

21    service of **GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS**

22    on **Timothy R. Garrison** by electronically filing the foregoing with the

23    Clerk of the District Court using its ECF System, which electronically

24    notifies Defendant's counsel

25        I declare under penalty of perjury that the foregoing is true and

26    correct.

27    Executed on June 10, 2008            Respectfully submitted,

28                                         KAREN P. HEWITT
                                           United States Attorney
                                           *s/Christopher P. Tenorio*
                                           CHRISTOPHER P. TENORIO
                                           Assistant U.S. Attorney
                                                        08CR1353-LAB